**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**CENTRAL STATE BANK; State Savings Bank; Harry C. Calcutt,
Defendants-Appellees.**

No. 85–1832.

United States Court of Appeals,
Sixth Circuit.

Feb. 26, 1987.

John Dorsey, Catherine G. O'Sullivan, Marion L. Jetton, argued, Antitrust Div., Dept. of Justice, Washington, D.C., John A. Smietanks, U.S. Atty., Grand Rapids, Mich., Robert E. Hauberg, Special Regulated Industries Sec., Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Jeffrey O. Birkhold, Thomas J. McNamara, argued, Warner, Norcross & Judd, Grand Rapids, Mich., Harry Calcutt, argued, Traverse City, Mich., for defendants-appellees.

Before KRUPANSKY, NELSON and RYAN, Circuit Judges.

## PER CURIAM.

Plaintiff-appellant the United States of America (the government) appealed from the judgment for defendants Central State Bank (Central), State Savings Bank (State) and Harry C. Calcutt (Calcutt) in this antitrust action initiated pursuant to Section 1 et seq. of the Sherman Act, 15 U.S.C. § 1 et seq.

Calcutt was the president, chairman of the board and majority shareholder of State, a small, state-chartered bank located in the town of Frankfort in Benzie County, Michigan. State was a full service banking institution offering a wide range of deposit accounts (including various certificates of deposit, checking accounts, savings accounts, NOW accounts, super NOW accounts, and individual retirement accounts) and a full range of loan services (including real estate loans, commercial loans, and installment loans). State was ranked 319th of Michigan's 371 banks in terms of total deposits.

Central was a small, state-chartered bank located in the town of Beulah in Benzie County, Michigan. Central was a full-service banking institution offering a full range of deposit accounts and loan products. In terms of total deposits, Central was ranked 325th of Michigan's 371 banks.

As a result of a series of stock purchases initiated during 1976, Calcutt acquired control of Central in February of 1979. The government in this action has charged Calcutt with conspiracy to gain control of Central to suppress competition between it and State in violation of the Sherman Act.

At trial, the parties offered opposing definitions of the relevant product market and the relevant geographic market. The government identified the relevant product market as the submarkets for three specific banking products and services: individual transaction accounts, small business loans, and business transaction accounts.[1] The government defined the relevant geographic market as Benzie County, Michigan. The defendants, on the other hand, argued that the relevant product market should be the "cluster" of banking services traditionally offered in the commercial banking industry and that the relevant geographic market was the five-county area incorporating Kalkaska, Leelanau, Antrim, Benzie and Grand Traverse counties.

The district court concluded that the relevant product market constituted the cluster of services that comprised the full range of services offered by commercial banks and that the relevant geographic market consisted of Benzie and Grand Traverse counties. The district court further determined that Calcutt's joint control of State and Central did not violate Section 1 of the Sherman Act. *United States v. Central State Bank*, 621 F.Supp. 1276 (W.D.Mich. 1985). The government has appealed from the judgment for defendants.

On appeal, the government charged as error the district court's definition of the relevant product market as the cluster of banking services traditionally offered by commercial banks. The record disclosed that the district court evaluated

---

1. The government defined "transaction accounts" to include not only traditional checking accounts, but also interest-bearing NOW and Super-NOW accounts. "Small business loans" consisted of loans to firms with sales up to 5–10 million dollars.

the evidence of record and concluded that the government failed to factually support its claim that existing circumstances in this case warranted a departure from the definition of the relevant product market as the cluster of banking services traditionally offered in the commercial banking industry adopted by the Supreme Court in *United States v. Philadelphia National Bank*, 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963). Because the trial court anchored its decision upon the facts developed during the course of the trial, its relevant product market definition is reviewable by this court under the clearly erroneous standard. *Westman Commission Co. v. Hobart International Inc.*, 796 F.2d 1216, 1220 (10th Cir.1986). Upon consideration of the record herein, this court cannot conclude that the district court committed clear error in defining the relevant product market as the cluster of banking services traditionally offered by commercial banks.

Accordingly, for the reasons set forth above and for the reasons articulated in the district court's well-reasoned opinion, the judgment of the district court is hereby AFFIRMED.